1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEMICKO BILLIE THOMAS,

                           Petitioner,

        v.

JAMES KEY,

                           Respondent.

Case No. C11-2186 RSM-BAT

**REPORT AND
RECOMMENDATION**

Petitioner Demicko Billie Thomas seeks 28 U.S.C. § 2254 habeas relief from his convictions for first degree robbery, first degree kidnapping, attempted first degree robbery, first degree assault, and unlawful possession of a firearm. Dkt. 89, Exhibit 1. Mr. Thomas raises eighteen claims in his amended petition for writ of habeas corpus. Dkt. 70, at 25-65.

The Court recommends denying the petition. The Court also recommends denying issuance of a certificate of appealability. An evidentiary hearing is not necessary.

## BACKGROUND

**A.    Statement of Facts**

The Washington Court of Appeals summarized the facts of Mr. Thomas's convictions as follows:

REPORT AND RECOMMENDATION- 1

On September 21, 2002, Thomas entered the Hohner jewelry store holding brochures that he had been given when he visited the store the day before. After some discussion, Thomas pointed a gun at Chuck Hohner, store owner, and brought Hohner around his bench area. Thomas forced Hohner to lie on the ground, bound him with zip ties and ordered him to quit squirming or he would kill him. Thomas then put on gloves and began taking jewelry. Hohner, knowing that the zip ties were breakable, broke free. As Hohner reached for a gun that was hidden from view, Thomas fired shots at him. Hohner returned fire, but neither were injured. Thomas fled, leaving behind the bag of jewelry and the brochures which contained a fingerprint.

On December 28, 2002, Thomas entered the Farrell jewelry store on the pretense that he was looking for an engagement ring before being deployed from Fort Lewis. Thomas wearing full army fatigues never took off his gloves to try on a ring. As Nancy Farrell began filling out a sales slip for Thomas' selection, she looked up to find Thomas pointing a gun at her face. Thomas held both Farrell and Kursnikhi, an employee, at gunpoint, and ordered them into the back room and onto the floor. There, he handcuffed them together at their hands and at their ankles. He told them to be quiet because he did not want to have to hurt them. He fled with cash and jewelry. Farrell and Kursnikhi, still handcuffed to each other, made their way to the panic button and the telephone to call 911. Firefighters required special bolt cutters to free the women.

Police retrieved a surveillance video from a nearby 7-Eleven store from which Thomas had called Farrell's jewelry store just before the robbery. Still photos from this tape were separately shown to Farrell and Kursnkhi, who each positively identified Thomas. Hohner saw these photos on the news, and identified the man in the photos as the same man who had attempted to rob his store. Thomas was convicted of all charges after a jury trial. . . .

Dkt. 89, Exhibit 2, at 1-3.

**B.    State Court Procedural History**

      **1.    Direct Appeal of Original Sentence**

The superior court first sentenced Mr. Thomas in June 2005. Dkt. 89, Exhibit 3. While the appeal from the June 2005 judgment and sentence was still pending, the court resentenced Mr. Thomas in October 2005. *Id.*, Exhibit 4.

Mr. Thomas timely appealed from the two judgments to the Washington Court of Appeals. *Id.*, Exhibits 5-10. The Washington Court of Appeals affirmed the convictions, but

REPORT AND RECOMMENDATION- 2

1    reversed the sentence, and remanded for resentencing.  *Id.*, Exhibit 2; *see also* Exhibit 11

2    (motion to modify); Exhibit 12 (motion to reconsider); Exhibit 13 (motion for extension of time);

3    Exhibit 14 (order).  Mr. Thomas sought review by the Washington Supreme Court.  *Id.*, Exhibit

4    15, at 1-5.

5        The Washington Supreme Court denied review on April 30, 2008.  *Id.*, Exhibit 16.  The

6    Washington Court of Appeals issued its mandate on May 28, 2008.  *Id.*, Exhibit 17.

7        **2.    Direct Appeal from Resentencing**

8        In accordance with the decision of the Washington Court of Appeals, the superior court

9    resentenced Thomas in August 2008.  Dkt. 89, Exhibit 1.  Mr. Thomas appealed from the new

10   sentence to the Washington Court of Appeals.  *Id.*, Exhibits 18-23.

11       Mr. Thomas then sought review by the Washington Supreme Court.  His attorney filed

12   the petition for review and Mr. Thomas filed multiple pro se motions.  *Id.,* Exhibits 24-30.  The

13   Washington Supreme Court denied Mr. Thomas's pro se motions and denied review on

14   December 3, 2010.  *Id.*, Exhibits 31 (Order), 32 (Mandate).

15       **3.    Personal Restraint Petitions**

16       In March 2012, Mr. Thomas filed a personal restraint petition in the Washington Court of

17   Appeals.  *Id.*, Exhibits 33-37.  The Washington Court of Appeals dismissed the petition as

18   untimely because Mr. Thomas filed the petition more than one year after his judgment became

19   final, and the petition raised claims that did not satisfy the statutory exceptions to the time bar

20   statute.  *Id.*, Exhibit 38.  In an alternative holding, the Washington Court of Appeals also held

21   that Mr. Thomas's claims were without merit.  *Id.*

22       Mr. Thomas sought review by the Washington Supreme Court.  *Id.*, Exhibit 39.  The

23   Washington Supreme Court denied review on March 6, 2015.  *Id.,* Exhibit 40.  The court agreed

REPORT AND RECOMMENDATION- 3

1    that the personal restraint petition was both time barred and without merit. *Id.* The state court

2    issued a certificate of finality on June 12, 2015. *Id.*, Exhibit 41.

3         In March 2014, while his first personal restraint petition was still pending, Mr. Thomas

4    filed a second personal restraint petition in the Washington Supreme Court. *Id.*, Exhibits 42-43.

5    After the Washington Supreme Court transferred the petition to the Washington Court of

6    Appeals for initial consideration, the Washington Court of Appeals stayed the petition pending

7    resolution of the first personal restraint petition. *Id.,* Exhibits 44 and 45. After the Washington

8    Supreme Court denied review of the first petition, the Washington Court of Appeals lifted the

9    stay and denied the second personal restraint petition. *Id.*, Exhibit 46.

10        Mr. Thomas then sought review by the Washington Supreme Court. *Id.*, Exhibit 47. The

11   Washington Supreme Court denied review on February 23, 2016, rejecting Mr. Thomas's claims

12   on the merits. *Id.*, Exhibit 48. The state court issued a certificate of finality on April 22, 2016.

13   *Id.*, Exhibit 49.

14                          **STANDARD OF REVIEW**

15        A federal court may grant a habeas corpus petition with respect to any claim that was

16   adjudicated on the merits in state court only if the state court's decision was (1) contrary to, or

17   involved an unreasonable application of, clearly established federal law, as determined by the

18   United States Supreme Court; or (2) based on an unreasonable determination of the facts in light

19   of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

20        A state court ruling is contrary to clearly established federal law if the state court either

21   arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or

22   decides a case differently than the Supreme Court "on a set of materially indistinguishable facts."

23   *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an unreasonable

REPORT AND RECOMMENDATION- 4

application of Supreme Court precedent "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. To be an unreasonable application of Supreme Court precedent, the state court's decision must be "more than incorrect or erroneous." *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir.2005). Rather, it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003).

In determining whether a state court decision was based on an unreasonable determination of the facts in light of the evidence, a federal habeas court must presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). A federal court may not overturn state court findings of fact "absent clear and convincing evidence" that they are "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). When applying these standards, a federal habeas court reviews the "last reasoned decision by a state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir.2004).

The Court retains the discretion to determine whether an evidentiary hearing is appropriate. *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir.2000). Following an independent review of the record, the Court concludes that an evidentiary hearing is unnecessary as the issues in this case may be resolved by reference to the state court record.

## DISCUSSION

**A.      Claim 1 – Firearm Sentencing Enhancement**

In his first claim, Mr. Thomas contends that his due process rights were violated when the state failed to prove an essential element as to the firearm enhancements – that he possessed a firearm that was operable at the time of the commission of the crime. He argues that there was no evidence that the "object" used in the robbery contained bullets or a serial number and that the

1  prosecution relied only on the testimony of two eyewitnesses, who had no experience with

2  firearms.

3          In a claim of insufficient evidence, "the relevant question is whether . . . *any* rational trier

4  of fact could have found the essential elements of the crime beyond a reasonable doubt."

5  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  An applicant is entitled to

6  relief only "if it is found that upon the record evidence adduced at the trial no rational trier of

7  fact could have found proof of guilt beyond a reasonable doubt."  *Id*. at 324.  The Court must

8  "view the record as a whole in the light most favorable to the prosecution."  *Gordon v. Duran*,

9  895 F.2d 610, 612 (9th Cir. 1990).  The review of the record for sufficiency of the evidence is

10 sharply limited, and the Court necessarily owes great deference to the trier of fact.  *Wright v.*

11 *West*, 505 U.S. 277, 296-97 (1992).  To produce sufficient evidence to support a conviction, "the

12 prosecution need not affirmatively 'rule out every hypothesis except that of guilt. . . .'"  *Id*. at

13 296 (quoting *Jackson*, 443 U.S. at 326).  "[A] reviewing court 'faced with a record of historical

14 facts that supports conflicting inferences must presume – even if it does not affirmatively appear

15 in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and

16 must defer to that resolution.'"  *Id*. at 297 (quoting *Jackson*, 443 U.S. at 326).

17         In addition to the deferential view of the evidence required under *Jackson v. Virginia*, 28

18 U.S.C. § 2254(d) also requires that the Court provide a high level of deference in reviewing the

19 state court's adjudication of the claim.  *Coleman v. Johnson,* 132 S. Ct. 2060, 2062 (2012);

20 *Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012).  "An

21 additional layer of deference is added to this standard of review by 28 U.S.C. § 2254(d), which

22 obliges the petitioner . . . to demonstrate that the state court's adjudication entailed an

23

REPORT AND RECOMMENDATION- 6

unreasonable application of the *Jackson* standard." *Emery v. Clark*, 604 F.3d 1102, 1111 n. 7

(9th Cir. 2010) (citing *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005)).

The Washington Court of Appeals rejected this claim, stating that whether the gun was

operable does not matter and the testimony of the victims was sufficient for a trier of fact to find

beyond a reasonable doubt that Mr. Thomas carried a real gun:

> A firearm enhancement is imposed if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010(1). RCW 9.94A.533. "Firearm" means a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder. RCW 9.41.010(1). Thomas argues that the evidence is not sufficient to show that the gun he carried while robbing the Farrell store was capable of firing an explosive.

> "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "Circumstantial evidence is as probative as direct evidence." *State v. Vermillion,* 66 Wn. App. 332, 342, 832 P.2d 95 (1992), (citation omitted). We defer to the trier of fact to resolve any conflicts in testimony, to weigh the persuasiveness of evidence, and to assess the credibility of the witnesses. *State v. Boot,* 89 Wn. App. 780, 791, 950 P.2d 964 (1998).

> In construing the firearm enhancement statute, Division Two of this Court held that the definition of firearm "did not limit firearms to only those guns capable of being fired during the commission of the crime. Rather, the court [in *Tongate*] characterized a firearm as a gun in fact, not a toy gun; and the real gun need not be loaded or even capable of being fired to be a firearm." *State v. Faust,* 93 Wn. App. 373, 380, 967 P.2d 1284 (1998) (holding that the firearm enhancement still applied even when the gun was mechanically inoperable) (citing *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980)).

> The *Faust* court also pointed out that "eyewitness testimony to a real gun that is neither discharged nor recovered is sufficient to support deadly weapons and/or firearms penalty enhancements." *Faust,* 93 Wn. App. at 380, 967 P.2d 1284 (citing *State v. Bowman,* 36 Wn. App. 798, 803-04, 678 P.2d 1273 (1984). The State need not introduce the actual weapon at trial. *Bowman,* 36 Wn. App. at 803. "'The evidence is sufficient if a witness to the crime has testified to the presence of such a weapon, as happened here. . . . The evidence may be circumstantial; no weapon need be produced or introduced.'" *Id.* (quoting *Tongate,* 93 Wn.2d at 754). In *Bowman,* the witness described the gun in detail and on cross examination stated that "there was no question in my mind whatsoever" that it was a real gun. *Bowman,* 36 Wn. App. at 798.

1

2          Here, both Farrell and Kursnikhi provided eyewitness testimony that
       Thomas held a real gun to Farrell's face. When asked during her 911 call whether

3      she had seen a weapon, Farrell replied, "Yes. Yes. He had a gun." During her
       testimony, Farrell described the gun as "a large hand held gun, it was silver,

4      aluminum silver color. The barrel of the gun was about that big, from what I
       remember, and had a very dark tunnel-looking hole in the middle." When asked

5      how the gun felt when Thomas shoved it into Farrell's side, Farrell replied, "Oh,
       it felt very heavy, very strong." Farrell drew a picture of the gun.

6          Kursnikhi testified that she had never seen a real gun in her life. She said

7      that when Thomas pointed the gun at Farrell, she "realized [we were] really in
       trouble" because Farrell's face turned "white as paper." Kursnikhi described the

8      gun as "beautiful," "white or grayish, kind of metal, shiny and flat," with a "little
       bit of a line going sideways." While Thomas never pointed the gun at Kursnikhi,

9      his statement "I don't want to hurt you" indicated that he was capable of hurting
       them with the weapon he held.

10         The testimony from all victims is sufficient, viewed in the light most
       favorable to the State, for a trier of fact to find beyond a reasonable doubt that

11     Thomas carried a real gun. We defer to the jury's assessment of the
       persuasiveness of the evidence and witness credibility. Whether the gun was

12     operable does not matter. *Faust,* 93 Wn. App. at 380, 967 P.2d 1284. The
       evidence is sufficient to support the jury's findings on the firearm enhancements

13     for the first degree robbery charge and two counts of first degree kidnapping.

14  Dkt. 89, Exhibit 2, at 3-5.

15      The Washington Supreme Court concluded that even if "operability" was required, the

16  prosecution had proven the firearm was operable:

17         "Operability" in this context means simply that the gun is real, not a toy
       gun or a gun made permanently incapable of firing. *State v. Raliegh*, 157 Wn.

18     App. 728, 734, 238 P.3d 1211 (2010), *review denied*, 170 Wn.2d 1029 (2011). As
       long as a gun is real and can readily be made to fire, it need not be presently

19     operable or even loaded to qualify as a firearm. *State v. Wade*, 133 Wn. App.
       855, 873, 138 P.3d 168 (2006), *review denied*, 160 Wn.2d 1002 (2007). Here,

20     there was sufficient evidence not only that the gun was real but was presently
       operable.

21
    Dkt. 89, Exhibit 40, at 4.
22
        The premise of Mr. Thomas's argument is that the State is required to prove that the
23
    firearm was operable to meet the statutory definition of a firearm. He relies on *State v.*

REPORT AND RECOMMENDATION- 8

*Recuenco,* 163 Wash.2d 428, 180 P3d 1276 (2008) ("We have held that a jury must be presented with sufficient evidence to find a firearm operable under this definition in order to uphold the enhancement."), and on *State v. Pierce,* 155 Wn. App. 701, 230 P.3d 237 (2010).

This same argument was addressed and rejected by Division Two of the Washington Court of Appeals in *State v. Raleigh*, 157 Wn. App. 728, 734–36, 238 P.3d 1211 (2010) and by the Division Three of the Washington Court of Appeals in *State v. Tasker*, 193 Wn. App. 575, 581–82, 373 P.3d 310, *review denied*, 186 Wn.2d 1013 (2016). Both the *Raleigh* and *Tasker* courts held that the language in *Recuenco* "was not part of *Recuenco's* holding and is nonbinding dicta." *Raleigh*, 157 Wn. App. at 735; *Tasker*, 193 Wn. App. at 592. The *Tasker* court also rejected *Pierce*, holding that "we disagree with the suggestion in *Pierce* that the State must always present evidence specific to operability at the time of the crime. And five months after *Pierce*, another panel of Division Two reached a diametrically different result in *Raleigh*." *Tasker*, 193 Wn. App. at 593–94. Thus, two divisions of the Washington Court of Appeals have "characterized *Recuenco's* statement about the requirement of 'sufficient evidence to find a firearm operable' as nonbinding dicta, and was 'merely to point out that differences exist between a deadly weapon sentencing enhancement and a firearm sentencing enhancement.'" *Id*. at 591 (quoting *Raleigh*, 157 Wn. App. at 735–36).

As noted by the Washington Court of Appeals in Mr. Thomas's case, the relevant inquiry, as set forth in *State v. Faust*, 93 Wn. App. 373, 379–81, 967 P.2d 1284 (1998), is whether the firearm was in fact a gun or a toy gun or gun-like object incapable of being fired. Evidence that the firearm appears to be a real gun is sufficient. *Tasker*, 193 Wn. App. at 594; *Raleigh*, 157 Wn. App. at 735–36. At Mr. Thomas's trial there were two eyewitnesses who testified that Mr. Thomas held a real gun to Ms. Farrell's face. During her 911 call, Ms. Farrell

REPORT AND RECOMMENDATION- 9

stated that Mr. Thomas had a gun, during her trial testimony, she provided a detailed description

of the gun, and she also drew a picture of the gun.  Although Ms. Kursnikhi testified that she had

never seen a real gun in her life, she saw Ms. Farrell's response when the gun was pointed at her

and Mr. Thomas's statement "I don't want to hurt you" indicated that he was capable of hurting

them with the weapon he held.

When viewed in the light most favorable to the State, the testimony was sufficient for a

trier of fact to find beyond a reasonable doubt that Mr. Thomas carried a real gun.  Mr. Thomas

has failed to show the state court adjudication of this claim was contrary to or involved an

unreasonable application of established federal law and it is recommended that habeas relief as to

Claim 1 be denied.

**B.    Claims 2 and 3 – Amendment to Information and Adequate Notice of Enhanced
Penalty**

Mr. Thomas contends that his due process and Sixth and Fourteenth Amendment right to

reasonable notice of the charges against him when (1) the trial court instructed the jury on both

the "displaying" and "armed" alternative means despite the fact that he was charged only with

the "displaying" alternative means (Claim 2); and (2) the charging information did not provide

adequate notice of the enhanced penalty associated with the firearm enhancement provision

(Claim 3).

In claim 2, Mr. Thomas contends that the trial judge constructively amended the

information by including in the "to convict" jury instruction, the alternative means of committing

the crime of robbery – being *armed* with the firearm – even though Mr. Thomas was charged

with committing the crime by *displaying* the firearm.  Dkt. 70, at 30-35.  The Washington Court

of Appeals rejected this claim:

REPORT AND RECOMMENDATION- 10

1        Thomas contends that the trial court instructed the jury on both the
"displaying" and "armed" alternative means despite the fact that he was charged
2    only with the "displaying" alternative means.  Thomas is incorrect.  The charging
language for first degree robbery alleged that Thomas displayed what appeared to
3    be a firearm or other deadly weapon, whereas the language for the firearm
enhancement alleged the alternative means of being armed with a firearm.  Thus,
4    Thomas had notice he would be charged with the alternative means of being
armed with a firearm.  Moreover, even if Thomas established that the jury was
5    instructed on an uncharged alternative means, he has failed to demonstrate
prejudice.  The error of offering an uncharged means as a basis for conviction is
6    prejudicial only if it is possible the jury might have convicted the defendant under
the uncharged alternative.  *State v. Doogan*, 82 Wn. App. 185, 189-190, 917 P.2d
7    155 (1996).  Here, the evidence consistently showed that Thomas displayed a gun
during the robberies.  There is no reasonable probability the jury convicted
8    Thomas on the grounds that he was armed with a gun but did not display it.

9    Dkt. 89, Exhibit 46, at 3.

10        In denying review of the second personal restraint petition, the Washington Supreme

11    Court determined it need not decide whether the jury instruction constructively amended the

12    information to include an uncharged means because Mr. Thomas had not shown any prejudice

13    from the alleged error:

14        But I need not address whether the jury was improperly instructed on the
"armed" means in this circumstance because the acting chief judge correctly held
15    in the alternative that Mr. Thomas demonstrated no prejudice.  Since this is a
personal restraint petition, Mr. Thomas must show that he was actually and
16    substantially prejudiced by constitutional error or that his trial suffered from
nonconstitutional error that inherently resulted in a complete miscarriage of
17    justice.  *In re Pers. Restraint of Yates,* 177 Wn.2d 1, 17, 296 P.3d 872 (2013).  He
makes no such showing.  The undisputed evidence at trial was that Mr. Thomas
18    pointed a firearm at the victims during the incident underlying the first degree
robbery charge.   There was no rational basis upon which the jury could have
19    found that Mr. Thomas was "armed with a deadly weapon" without also finding
that he "displayed" what appeared to a firearm or deadly weapon.  There was thus
20    no danger that the jury found Mr. Thomas guilty only on the basis of an
uncharged means of committing the crime.  *See State v. Doogan,* 82 Wn. App.
21    185, 189, 917 P.2d 155 (1996) (error in offering uncharged means as basis for
conviction is prejudicial if it is possible the jury convicted the defendant under the
22    uncharged alternative).

23    Dkt. 89, Exhibit 48, at 2-3.

REPORT AND RECOMMENDATION- 11

1    The Washington Court of Appeals also rejected Mr. Thomas's contention that the

2    information did not properly notify him of the potential maximum sentence he would face if

3    convicted:

> Thomas appears to argue that he was prejudiced by the improper citation
> because he did not know the potential maximum sentence he faced when he
> decided to go to trial.  But Thomas fails to provide any relevant Washington
> authority requiring the State to include the maximum potential sentence in the
> charging document or determine whether a defendant understands the maximum
> potential sentence before he exercises his constitutional right to a jury trial.

Dkt. 89, Exhibit 23, at 10.

"The Sixth Amendment guarantees a criminal defendant the fundamental right to be

informed of the nature and cause of the charges made against him so as to permit adequate

preparation of a defense."  *Gautt v. Lewis*, 489 F.3d 993, 1002 (9th Cir.2007), *cert. denied*, ---

U.S. ----, 128 S.Ct. 1477, 170 L.Ed.2d 300 (2008); *see* U.S. Const. amend. VI ("In all criminal

prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the

accusation[.]").  "This guarantee is applicable to the states through the due process clause of the

Fourteenth Amendment."  *Gautt*, 489 F.3d at 1003; *see also Cole v. Arkansas*, 333 U.S. 196, 201

(1948) ("No principle of procedural due process is more clearly established than that notice of

the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if

desired, are among the constitutional rights of every accused in a criminal proceeding in all

courts, state or federal.").  "When determining whether a defendant has received fair notice of

the charges against him, [the habeas court] begin[s] by analyzing the content of the information."

*Gautt*, 489 F.3d at 1003.  "The principal purpose of the information is to provide the defendant

with a description of the charges against him in sufficient detail to enable him to prepare his

defense."  *James v. Borg*, 24 F.3d 20, 24 (9th Cir.), *cert. denied*, 513 U.S. 935 (1994).  While the

information "need not contain a citation to the specific statute at issue[, it] ... must in some

REPORT AND RECOMMENDATION- 12

1  appreciable way apprise the defendant of the charges against him so that he may prepare a

2  defense accordingly." *Gautt*, 489 F.3d at 1004.

3      On habeas review, the standard for determining whether an error of constitutional

4  magnitude requires reversal of a conviction is whether the error had a "substantial and injurious

5  effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623

6  (1993) (internal quotation marks and citation omitted).  Applying the *Brecht* harmless error

7  standard, the Court is convinced that any error in the information did not have a substantial and

8  injurious effect on the verdict.

9      First, the information charged Mr. Thomas with committing the crime of robbery by

10  displaying a firearm.  The information also included a firearm sentencing enhancement that

11  expressly accused Mr. Thomas of committing the crime while being armed with a firearm.  *See,*

12  *e.g.,* Dkt. 89, Exhibit 34, Appendix T (copy of second amended information).  Under

13  Washington law, the state is not required to prove that the gun was operable for purposes of the

14  firearm enhancement statute.  *State v. Faust,* 93 Wash. App. 373, 967 P.2d 1284 (1998).  Thus,

15  Mr. Thomas had adequate notice that he was charged with committing the crime of robbery

16  while being armed with a firearm.  As noted by the Washington Supreme Court, the undisputed

17  evidence at trial was that Mr. Thomas pointed a firearm at the victims during the incident

18  underlying the first degree robbery charge and therefore, there was no rational basis upon which

19  the jury could have found that Mr. Thomas was "armed with a deadly weapon" without also

20  finding that he "displayed" what appeared to a firearm or deadly weapon.

21      Second, Mr. Thomas contends that the information charged him with six firearm

22  enhancements, but incorrectly referred to § 310, which would have allowed the enhancements to

23  run concurrently.  He argues that his decision to reject three plea offers in 2003 and 2004 (for

1  sentences of 25, 27, and 28 years, respectively) was based on the mistaken belief that the

2  enhancements would run concurrently and that he was facing a sentence of 25 to 30 years, rather

3  than the 62 plus years he received.  Dkt. 70, at 36-37.

4         In 1998, the Washington Legislature amended Washington's firearm enhancement

5  statute, which provides that firearm enhancements may not be served concurrently.  RCW

6  9.94A.510(3).  Before the 1998 amendments, the Washington Supreme Court in *In re Charles,*

7  135 Wash.2d 239, 254, 955 P.2d 798 (1998), interpreted the statute as precluding consecutive

8  enhancements where the base sentences were concurrent.  However, Mr. Thomas was charged

9  with crimes that were committed in 2002, well after the 1998 amendments.  He argues that the

10  citation error in the indictment led to the rejection of three plea bargains – however, Mr. Thomas

11  was not "entitled to a plea bargain offer made on mistaken legal assumptions."  *See e.g., Perez v.*

12  *Rosario,* 459 F.3d 943 (9th Cir. 2006) (petitioner who rejected a plea bargain based on a mistaken

13  belief that a prior conviction would not be counted as a third strike could not show prejudice).

14         Mr. Thomas also fails to cite any Supreme Court precedent that required the information

15  to specifically inform him of the potential sentence he faced if convicted.  The Court is not aware

16  of any Supreme Court precedent requiring the information to provide notice to Mr. Thomas of

17  the concurrent or consecutive nature of the firearm sentencing enhancements.

18         Mr. Thomas was provided fair notice of the firearm use enhancements and therefore, any

19  error in the information did not have a "substantial and injurious effect or influence in

20  determining the jury's verdict."  *Brecht*, 507 U.S. at 623 (internal quotation marks and citation

21  omitted).  Thus, the Court is persuaded that the state court's decision was neither contrary to, nor

22  an unreasonable application of, clearly established federal law and recommends that habeas

23  relief as to Counts 2 and 3 be denied.

REPORT AND RECOMMENDATION- 14

**C.    Claim 4 – Sentencing Enhancements and the Double Jeopardy Clause**

Mr. Thomas alleges the imposition of the six firearm sentencing enhancements violates the Double Jeopardy Clause.  Dkt. 70, at 39-46.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  This principle applies to state criminal prosecutions through the Due Process Clause of the Fourteenth Amendment.  *Benton v. Maryland*, 395 U.S. 784, 795-96 (1969).   The guarantee against double jeopardy includes three distinct constitutional protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (*quoting Brown v. Ohio*, 432 U.S. 161, 165 (1977)).

The United States Supreme Court applies a statutory theory to determine whether a defendant's prosecution or conviction and punishment for two offenses violate the Double Jeopardy Clause of the United States Constitution.  *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).  The *Blockburger* test provides that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there have been two offenses or only one for double jeopardy purposes is whether each statutory provision requires proof of an additional fact which the other does not.  *Id.* at 304.  If the legislature clearly intended to punish certain acts as separate offenses rather than as one offense, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

The Double Jeopardy Clause does no more than prevent the sentencing court from imposing greater punishment than the legislature intended.  *Id*. at 368; *see also Plascencia v. Alameida*, 467 F. 3d 1190, 1204 (9th Cir. 2006) (imposition of 25-year to life imprisonment sentence for first-degree murder in addition to 25-year to life sentencing enhancement for using a firearm to commit the murder did not violate the double jeopardy clause where California legislature intended to provide additional sentencing increase when a firearm is used to commit murder).

The Washington Court of Appeals first rejected the claim on the direct appeal of the original sentence:

> "Washington courts have repeatedly rejected arguments that weapon enhancements violate double jeopardy." *State v. Huested,* 118 Wn. App. 92, 95, 74 P.3d 672 (2003) (citing *State v. Claborn,* 95 Wn.2d 629, 636-38, 628 P.2d 467 (1981)); *see also, State v. Nguyen,* 134 Wn. App. 863, 868, 142 P.3d 1117 (2006) *review pending* 2007 Wash. LEXIS 102 (Wash. Jan. 30, 2007). The "statute unambiguously shows legislative intent to impose two enhancements based on a single act of possessing a weapon, where there are two offenses eligible for an enhancement." *Huested,* 118 Wn. App. at 95 (evaluating the deadly weapon enhancement section of chapter 9.94A RCW, which contains the same language as the firearm enhancement section). However, Thomas urges a double jeopardy "same elements" analysis in light of *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).
>
> We recently addressed and rejected this argument in *Nguyen,* 134 Wn. App. at 869, 871 (finding that "nothing in *Blakely* gives reason to question prior Washington cases holding that double jeopardy is not violated by weapon enhancements even if the use of the weapon is an element of the crime."). *Nguyen* at 869. Like *Nguyen,* Thomas was convicted of several counts of first degree crimes that required the use of a firearm. And like *Nguyen,* the jury found Thomas armed with a firearm on each count and the sentencing court imposed consecutive firearm enhancements. Since Thomas' case and arguments are indistinguishable, we adhere to our conclusion in *Nguyen;* any legislative redundancy in mandating enhanced sentences for offenses involving the use of a firearm is intentional and does not violate double jeopardy principles or *Blakely.* Legislative intent is also clear that the firearm enhancement sentences must be imposed consecutively. [footnote omitted]

REPORT AND RECOMMENDATION- 16

1

2            Double jeopardy is not violated. Thomas had six qualifying offenses so he
        is eligible for six consecutive firearm enhancement sentences. . . .

3    Dkt. 89, Exhibit 2, at 6-7.

4            During the appeal from the new sentence, the Washington Court of Appeals again

5    rejected Mr. Thomas's double jeopardy argument:

6            Thomas argues that the sentencing court erred in imposing multiple
        enhancements for the same criminal conduct. But as the Washington Supreme
7        Court held in *State v. Mandanas*, 168 Wn.2d 84, 88, 228 P.3d 13 (2010),
        sentencing courts are statutorily required to impose multiple enhancements where
8        a defendant is convicted of multiple enhancement-eligible offenses that constitute
        the same criminal conduct.

9
            Thomas also claims that the imposition of multiple firearm enhancements
10       based on a single incident involving a single firearm violates double jeopardy.
        Washington courts have repeatedly rejected such claims. *State v. Kelley,* 168
11       Wn.2d 72, 83, 226 P.3d 773 (2010) (double jeopardy is not violated where
        legislature intended "cumulative punishments may be imposed for the same act or
12       conduct in the same proceeding"); *State v. Aguirre,* 168 Wn.2d 350, 366-67, 229
        P.3d 669 (2010) (double jeopardy not offended by weapon enhancements even
13       when being armed with weapon is element of underlying crime). *See also State v.
        Nguyen,* 134 Wn. App. 863, 866-68, 142 P.3d 1117 (2006) (rejecting double
14       jeopardy challenge to multiple firearm enhancements totally 492 months where
        certain of the multiple convictions constituted same criminal conduct and
15       sentencing court imposed a standard range sentence of 135 months) (cited with
        approval in *Kelley,* 168 Wn.2d at 81), *review denied,* 163 Wn.2d 1053, 187 P.3d
16       752 (2008); *State v. Ward,* 125 Wn. App. 243, 251-52, 104 P.3d 670 (2004) (no
        double jeopardy violation in two consecutive firearm enhancements based on use
17       of single gun in two assaults during one incident); *State v. Huested,* 118 Wn. App.
        92, 95, 74 P.3d 672 (2003) (no double jeopardy violation in two weapon
18       enhancements following convictions of first degree burglary and first degree rape
        in a single incident while armed with a single knife, because enhancement statute
19       "unambiguously shows legislative intent to impose two enhancements based on a
        single act of possessing a weapon, where there are two offenses eligible for an
20       enhancement").

21   Dkt. 89, Exhibit 23, at 7-9.

22           The firearm sentence enhancement and the crime of unlawful possession of a firearm are

23   not the "same offense" for purposes of *Blockburger* analysis.  Washington law provides for

REPORT AND RECOMMENDATION- 17

additional punishment if it is established that the defendant was armed with a firearm at the time

of his offense.  RCW 9.94A.533(3).  Washington courts have repeatedly held that the

Washington Legislature specifically intended that use of a firearm be separately punished, even

when use of a firearm is an element of the underlying crime.  *See State v. Aguirre*, 168 Wn.2d

350, 229 P.3d 669 (2010); *State v. Kelley*, 168 Wn.2d 72, 226 P.3d 773 (2010).

Mr. Thomas fails to show the state court adjudication was was contrary to or involved an

unreasonable application of established federal law.  First, the Double Jeopardy Clause does not

apply to sentencing enhancements.  Second, even assuming that the Double Jeopardy Clause

applies to sentencing enhancements, the state court reasonably determined there was no double

jeopardy violation because Mr. Thomas had six separate offenses that qualified for a sentencing

enhancement.  Thus, it is recommended that habeas relief as to Claim 4 be denied.

Mr. Thomas also contends that the six enhancements violates Washington's "unit of

prosecution" rule.  But federal habeas corpus relief does not lie for mere errors of state law.

*Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Allegations of state sentencing errors are not

cognizable in federal court.  *Bonillas v. Hill*, 134 F.3d 1414, 1417 (9th Cir. 1998); *Miller v.

Vasquez*, 868 F.2d 1116, 1119 (9th Cir. 1989).  Mr. Thomas's "unit of prosecution" claim fails to

state a cognizable claim and habeas relief on this ground may also be denied.

**D.    Claims 5 and 15 – Ineffective Assistance of Appellate Counsel**

Mr. Thomas claims his appellate attorney provided ineffective assistance by not raising

certain claims on direct appeal.  First, Mr. Thomas contends his appellate attorney did not raise a

claim regarding jury instructions on "unanimity."  Dkt. 70, at 46-50.  Second, Mr. Thomas

contends counsel did not raise on direct appeal the claims of ineffective assistance of trial

counsel that Mr. Thomas later raised in his personal restraint petition.  Dkt. 70-1, at 41-43.

REPORT AND RECOMMENDATION- 18

Like a claim of ineffective trial counsel, a claim of ineffective assistance of appellate counsel is reviewed under a two-prong standard. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Smith v. Robbins*, 528 U.S. 259 (2000). Under the first prong, the petitioner must prove that counsel's performance fell below an objective standard of reasonableness. *Flores-Ortega*, 528 U.S. at 477. The Court must judge the reasonableness of counsel's conduct on the facts of the case, viewed as of the time of counsel's conduct. *Id*. "[J]udicial scrutiny of counsel's performance must be highly deferential." *Id*. (quoting *Strickland*, 466 U.S. at 689). To provide effective representation, counsel is not required to raise every non-frivolous argument or colorable issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983). Indeed, the process of winnowing out weaker arguments on appeal and focusing on those issues more likely to succeed is the hallmark of effective advocacy. *Id*. at 751-52.

Under the second prong, the petitioner must prove counsel's deficient performance caused prejudice. *Flores-Ortega*, 528 U.S. at 477. The petitioner must prove a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. *Id*. The failure to prove either prong defeats the petitioner's claim.

In the first direct appeal, appellate counsel raised issues including sufficiency of the evidence, imposition of multiple sentencing enhancements, and the definition of the elements of the crimes. Dkt. 89, Exhibit 5. Counsel in the second appeal raised issues including the right to counsel at sentencing, the imposition of multiple sentencing enhancements, and the adequacy of the notice of the charges. Dkt. 89, Exhibit 18. Mr. Thomas does not rebut the presumption that appellate counsel's decisions as to which issues to include in the appellate briefs were not the

REPORT AND RECOMMENDATION- 19

1    result of competent strategy.  Consequently, Mr. Thomas does not show appellate counsel's

2    representation was deficient.

3         In claim 5, Mr. Thomas contends that counsel was ineffective for not raising a claim

4    regarding the instructions governing the sentencing enhancement verdict forms because they

5    improperly required the jury to be unanimous before deciding that Mr. Thomas was not armed

6    with a firearm.  But the Washington Court of Appeals rejected this "unanimity" claim when Mr.

7    Thomas raised it in his personal restraint petition.  *See* Dkt. 89, Exhibit 38, at 3 (concluding the

8    instructions were not erroneous under *State v. Nunez*, 174 Wn.2d 707, 709-10, 285 P.3d 21

9    (2012)); Exhibit 40, at 3 (same).  Thus, Mr. Thomas cannot show counsel's representation was

10   both deficient and prejudicial when the state courts later rejected the very claim that Mr. Thomas

11   contends counsel should have raised on appeal.

12        Mr. Thomas also argues that he would have prevailed if his counsel had raised the issue

13   on direct appeal before the Washington Supreme Court decided *State v. Nunez*.  However, a

14   counsel's failure to assert a rule of law later overturned by the state supreme court does not show

15   ineffective assistance under *Strickland*.  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)

16   ("Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the

17   defendant of any substantive or procedural right to which the law entitles him.")

18        In Claim 15, Mr. Thomas maintains that on direct appeal, his counsel should have raised

19   his various claims of ineffective assistance of counsel (set forth in Claims 12, 13, and 14).

20   However, as discussed below, Mr. Thomas as not shown a reasonable probability that he would

21   have prevailed on Claims 12, 13, and 14 had his counsel raised them on direct appeal.  Thus, he

22   cannot show prejudice.

23

REPORT AND RECOMMENDATION- 20

1   Mr. Thomas has failed to show the state court adjudication of this claim was contrary to

2   or involved an unreasonable application of established federal law and it is recommended that

3   habeas relief on Claims 5 and 15 be denied.

4   **E.    Claims 6 and 7 – Improper Application of a "New Rule"**

5   Mr. Thomas contends that the state courts improperly applied a new rule, in violation of

6   *Teague v. Lane,* 489 U.S. 288 (1989) and the Ex Post Facto Clause, when the courts applied the

7   *Nunez* decision to reject his "unanimity" claim.  The Ex Post Facto Clause does not apply to

8   retroactive judicial decisions, *see Rogers v. Tennessee*, 532 U.S. 451 (2001), and the Supreme

9   Court has expressly rejected the argument that petitioners have an interest in opposing the

10  retroactive application of a new rule to support a conviction.  *Lockhart*, 506 U.S. at 373.  As the

11  Court explained:

12      A federal habeas petitioner has no interest in the finality of the state-court
        judgment under which he is incarcerated:  Indeed, the very purpose of his habeas
13      petition is to overturn that judgment.  Nor does such a petitioner ordinarily have
        any claim of reliance on past judicial precedent as a basis for his actions that
14      corresponds to the State's interest described in the quotation from *Butler, supra.*
        The result of these differences is that the State will benefit from our *Teague*
15      decision in some federal habeas cases, while the habeas petitioner will not.  This
        result is not, as the dissent would have it, a "windfall" for the State, but instead is
16      a perfectly logical limitation of *Teague* to the circumstances which gave rise to it.
        *Cessante ratione legis, cessat et ipsa lex.*

17
    *Lockhart*, 506 U.S. at 373.  Thus, under *Lockhart,* Mr. Thomas is not entitled to relief and it is
18
    recommended that Claims 6 and 7 be denied.
19
    **F.    Claim 8 – Jury Instruction, Kidnapping Elements**
20
21  Mr. Thomas alleges the jury instructions did not define the "restraint" element of

22  kidnapping.  Dkt. 70-1, at 7-12.

23  "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level

    of a due process violation.  The question is 'whether the ailing instruction … so infected the

REPORT AND RECOMMENDATION- 21

1  entire trial that the resulting conviction violates due process.'"  *Middleton v. McNeil*, 541 U.S.

2  433, 437 (2004).  Jury instructions may not be viewed in artificial isolation but must be

3  considered in the context of the instructions as a whole and the entire trial record.  *Middleton*,

4  supra; *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Boyde v. California*, 494 U.S. 370, 378

5  (1990); *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).  It is not enough that a challenged

6  instruction is "undesirable, erroneous, or even 'universally condemned.'"  *Cupp v. Naughten*,

7  414 U.S. at 146.  The reviewing court must determine "'whether there is a reasonable likelihood

8  that the jury has applied that challenged instruction in a way' that violates the Constitution."

9  *Middleton, supra* (quoting *Estelle v. McGuire, supra*).

10  The "reasonable likelihood" standard from *Boyde* is the settled, single standard of review

11  for jury instructions.  *See Estelle v. McGuire*, 502 U.S. at 72 n.4 (discussing and disapproving

12  other standards that considered "how reasonable jurors could have" or "a reasonable juror would

13  have" understood an instruction).  In answering this question, the alleged instructional error must

14  be considered within the context of the jury instructions as a whole and in light of the entire trial

15  court record.  *Cupp*, 414 U.S. at 147; *Waddington*, 129 S. Ct. at 832; *Middleton v. McNeil*, 541

16  U.S. 433, 437 (2004)).  This standard for reviewing claims of instructional error recognizes "a

17  judgment of conviction is commonly the culmination of a trial which includes testimony of

18  witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the

19  judge."  *Cupp*, 414 U.S. at 147. The standard also recognizes that "[j]urors do not sit in solitary

20  isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers

21  might."  *Boyde*, 494 U.S. at 380-81.  "Differences among them in interpretation of instructions

22  may be thrashed out in the deliberative process, with commonsense understanding of the

23

instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting." *Id.* at 381.

If the petitioner establishes the alleged instructional error rose to the level of a constitutional error, the Court must determine whether the error caused actual prejudice. *Shumway v. Payne*, 223 F.3d 982, 986 (9th Cir. 2000). The burden of showing that an instructional error was prejudicial is even greater than the showing required to establish plain error on direct appeal. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *United States v. Frady*, 456 U.S. 152, 166 (1982).

Mr. Thomas contends that the jury instructions did not properly define the element of restraint for the crime of kidnapping. The Washington Court of Appeals rejected this claim:

> Thomas argues that "restraint" is a material element of kidnapping. He argues that because the trial court did not provide jury instructions defining "restraint," the State's burden of proof was lessened and he was deprived of his right to a fair trial.
>
> Jury instructions are reviewed de novo. *Blaney v. Intl Ass'n of Machinists*, 151 Wn.2d 203, 210, 87 P.3d 757 (2004). "A trial court has discretion to decide how instructions are worded." *State v. Ng*, 110. Wn.2d 32, 41, 750 P.2d 632 (1988). The Constitution requires that the trial court instruct the jury on each element of the crime charged. *State v. Byrd*, 125 Wn.2d 707, 713, 887, P.2d 396 (1995). But trial courts are not required to further define one of the elements, especially when the meaning of a term is easily understood by laymen. *See Ng*, 110 Wn.2d at 44, (finding that "'[t]heft' like 'assault' is a term of sufficient common understanding to allow the jury to convict of robbery."). Instructions are sufficient if they properly inform the jury of the applicable law without misleading the jury, and permit each party to argue its theory of the case. *Gammon v. Clark Equip.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985).
>
> In Thomas' case, the jury instructions read:
>
> > [t]o convict the defendant of the crime of kidnapping in the first degree .. , each of the following elements of the crime must be proved beyond a reasonable doubt: (1) That ... the defendant intentionally abducted [victim]; (2) That the defendant abducted that person with intent to facilitate the commission of robbery in

the first degree; and; (3) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty....

The definition of "abduct" was also provided to the jurors: "Abduct means to restrain a person using or threatening to use deadly force."  The jury was properly instructed as to the elements of first degree kidnapping.  They were also provided with the definition of "abduct."  Within that definition the word "restrain" is a term of sufficient common understanding to allow the jury to convict Thomas of kidnapping.  Because the instructions properly informed the jury of the applicable law, they were sufficient in instructing the jury on the State's burden of proof.  Thomas was not deprived of a fair trial.

Dkt. 89, Exhibit 2, at 10-11.   "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  The law presumes that juries follow their instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Here, the jury was properly instructed as to the elements of the crime of first degree kidnapping and were also provided with a definition of "abduct."  As noted by the Washington Court of Appeals, the word "restrain" was contained within the definition of "abduct" and is a term of sufficient common understanding to allow the jury to convict Mr. Thomas of kidnapping.

Mr. Thomas does not show that the state court adjudication of this claim was contrary to or an unreasonable application of clearly established federal law and therefore, it is recommended that Claim 8 be denied.

**G.    Claims 9 and 10 – Vindictive and Selective Charging**

Mr. Thomas alleges that the prosecutor vindictively and selectively prosecuted him because the prosecutor increased the charges against him prior to trial and the prosecutor did not similarly charge other people suspected of robbing the same store.  Dkt. 70-1, at 12-24.  Mr.

REPORT AND RECOMMENDATION- 24

1   Thomas is not entitled to relief under 28 U.S.C. § 2254(d) and *Teague v. Lane,* 489 U.S. 288

2   (1989) because the claim is not clearly established and requires the application of a new rule.

3   In *North Carolina v. Pearce*, 395 U.S. 711, 723-25 (1969), the Supreme Court held a trial judge

4   may not impose a harsher sentence after a retrial where the defendant had successfully appealed

5   from the first conviction if the harsher sentence is the result of a vindictive motive of the

6   sentencing judge.  To assure the absence of a vindictive judicial motivation in such cases, the

7   *Pearce* Court required that whenever a judge imposes a more severe sentence after a new trial,

8   the reasons for the harsher sentence must appear in the record.  *Pearce*, 395 U.S. at 726; *see also*

9   *United States v. Goodwin*, 457 U.S. 368, 374 (1982); *Wasman v. United States*, 468 U.S. 559,

10  565 (1984).  The Court has applied a similar presumption where the prosecution filed additional

11  charges after a convicted defendant had appealed and sought a new trial *de novo*.  *Blackledge v.*

12  *Perry*, 417 U.S. 21 (1974); *Thigpen v. Roberts*, 468 U.S. 27 (1984).

13          However, this rule does not apply in the context of a pretrial plea bargaining process.

14  *Goodwin*, 457 U.S. at 381-83; *Bordenkircher v. Hayes*, 434 U.S. 357 (1978).  Rather, the Court

15  has upheld the decisions of prosecutors to file additional charges if the defendant did not accept a

16  deal.  *Bordenkircher*, 434 U.S. at 364-65; *Goodwin*, 457 U.S. at 380.  The Supreme Court

17  recognized plea bargaining plays an important role.  *Bordenkircher*, 434 U.S. at 360-61.

18  Although the prosecution may not retaliate against a defendant with vindictive charging during

19  trial following reversal of a conviction on appeal, "in the 'give-and-take' of plea bargaining,

20  there is no such element of punishment or retaliation so long as the accused is free to accept or

21  reject the prosecution's offer."  *Id.* at 363; *see also Goodwin*, 457 U.S. at 378-80.

22          The Washington Court of Appeals rejected Mr. Thomas's claims of vindictive

23  prosecution:

REPORT AND RECOMMENDATION- 25

1    The trial court, heard extensive pre-trial argument alleging prosecutorial
vindictiveness.  In denying Thomas' motion to dismiss based on these allegations,

2 the trial court issued a written order containing its findings of fact and conclusions
of law.  The trial court concluded that "the State [had] discretion to charge a

3 defendant according to the conduct committed and there is no evidence that the
State acted out of vindictiveness or under any other prohibited purpose."  Thomas

4 failed to assign any error to any finding of fact or conclusion of law in this order.
Because unchallenged findings are verities on appeal, we do not disturb the trial

5 court's conclusion.

6 Dkt. 89, Exhibit 2, at 13.

7    Mr. Thomas also alleges selective prosecution based upon his race.  However, the

8 Supreme Court has not held that such allegations demonstrate a violation of the Constitution.  In

9 addressing an analogous claim of racial profiling, the Court has "held that we would not look

10 behind an objectively reasonable traffic stop to determine whether racial profiling or a desire to

11 investigate other potential crimes was the real motive."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074,

12 2082 (2011) (citing *Wren v. United States*, 517 U.S. 806 (1996)).

13    Moreover, the Washington Court of Appeals determined that Mr. Thomas did not prove

14 selective prosecution:

15    In arguing his Criminal Rule (CrR) 8.3 motion for governmental
misconduct, Thomas submitted probable cause determinations detailing another

16 robbery committed at the Farrell store in November of 2003.  There, two white
men held their victims at gunpoint, forced them into the back of the store, and

17 duct-taped their hands and feet together.  They were charged with three counts of
first degree robbery and unlawful possession of a controlled substance.  Thomas

18 argues that this demonstrates selective prosecution in violation of his equal
protection rights. The trial court denied this motion.

19

20    "Trial court rulings based on allegations of prosecutorial misconduct are
reviewed under an abuse of discretion standard."  *State v. Finch*, 137 Wn.2d 792,

21 839, 975 P.2d 967 (1999).  Thomas must prove that the choice to charge him with
kidnapping, when others similarly situated were not, "was deliberately based on

22 an unjustifiable standard, such as race, religion, or other arbitrary classification."
*United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972).  "Mere selectivity

23 in prosecution creates no constitutional problem."  *Steele*, 461 F.2d at 1151 (citing
*Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962)).
Thomas provides no evidence, other than pointing out that the other robbers were

REPORT AND RECOMMENDATION- 26

1    white, that the choice to prosecute him for kidnapping was based on an
2    unjustifiable standard such as race. His equal protection claim fails. The trial
     court did not abuse its discretion when it denied his CrR 8.3 motion.

3    Dkt. 89, Exhibit 2, at 25-26.

4        The state court reasonably determined that Mr. Thomas did not prove the prosecutor's

5    charging decisions were based upon an improper motive. Mr. Thomas has not shown that the

6    state court's adjudication of these claims was contrary to or an unreasonable application of

7    clearly established federal law and therefore, it is recommended that Claims 9 and 10 be denied.

8    **H.    Claim 11 – Juror 9's Use of an Assisted-Hearing Device**

9        In Claim 11, Mr. Thomas alleges that Juror 9's use of an assisted-hearing device violated

10   his right to an impartial jury because the juror could hear matters discussed during the sidebar

11   conferences. Dkt. 70-1, at 24-30.

12       Trial by an impartial jury is fundamental to the fair administration of criminal justice.

13   *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

14   The introduction of extrinsic influences or evidence into the jury's deliberative process may

15   jeopardize that fundamental right. *Remmer v. United States*, 347 U.S. 227, 229 (1954). But "due

16   process does not require a new trial every time a juror has been placed in a compromising

17   situation. Were that the rule, few trials would be constitutionally acceptable. . . . [I]t is virtually

18   impossible to shield jurors from every contact or influence that might theoretically affect their

19   vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Rushen v. Spain*, 464 U.S. 114, 118 (1983).

20   To prevail, the defendant bears the burden to establish actual bias. *Smith*, 455 U.S. at 215 ("This

21   Court has long held that the remedy for allegations of juror partiality is a hearing in which the

22   defendant has the opportunity to prove actual bias"); *Wainwright v. Witt*, 469 U.S. 412 (1985)

23   ("it is the adversary seeking exclusion [of a juror] who must demonstrate, through questioning,

REPORT AND RECOMMENDATION- 27

that the potential juror lacks impartiality"). The federal courts must presume that juries follow instructions. *Weeks v. Angelone,* 528 U.S. 225, 234 (2000); *U.S. v. Olano*, 507 U.S. 725, 740 (1993); *Francis v. Franklin,* 471 U.S. 307, 324-25, n. 9 (1985). Juries are presumed to follow cautionary and curative instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Drayden v. White*, 237 F.3d 704, 713 (9th Cir. 2000); *U.S. v. Nelson*, 137 F.3d 1094, 1106 (9th Cir. 1998); *U.S. v. Brady*, 579 F.2d 1121, 1127 (9th Cir. 1978). The defendant must prove the denial of the right to an impartial jury by specifically showing a prejudicial impact upon the jury's deliberations. *Lee v. Marshall*, 42 F.3d 1296, 1298-99 & n. 5 (9th Cir. 1994).

The state court factual findings as to whether the exposure affected the juror's impartiality are presumed correct. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S 539 (1981). A determination that a juror is impartial, and not biased, is a factual determination. *Uttecht v. Brown*, 127 S. Ct. 2218, 2223-24 (2007); *Witt*, 469 U.S. at 426-32; *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *Mu'Min v. Virginia*, 500 U.S. 428, 429 (1991); *Noltie v. Peterson*, 9 F.3d 802, 807 (9th Cir. 1993). The petitioner must rebut this finding of fact by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Darden v. Wainwright*, 477 U.S. 168, 175 (1986).

The Washington Court of Appeals rejected this claim:

> Thomas argues that because a juror using an assisted-hearing device acknowledged that he could hear sidebar conversations, that juror was biased and violated Thomas' Sixth Amendment right to an impartial jury. Thomas asks this Court to find implied bias and reverse his conviction.

> "Case law, the juror bias statute, our Superior Court Criminal Rules and scholarly comment all emphasize that the trial court is in the best position to determine a juror's ability to be fair and impartial. It is the trial court that can observe the demeanor of the juror and evaluate and interpret the responses." *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991). A challenge for implied bias may be taken for any or all of four distinct causes, none of which apply here. RCW 4.44.180. [footnote omitted] The report of proceedings shows that the judge and both attorneys concluded that the sidebar conversations did not involve any information that would have prejudiced the juror. When asked by the judge

REPORT AND RECOMMENDATION- 28

1   whether he had heard anything from their sidebar conversations that was different
2   from the testimony presented through the witness stand, the juror replied "[n]one
    whatsoever."  He repeatedly replied "no" to further questioning from the judge.
3   The circumstances here do not meet the, definition of implied bias.

    Dkt. 89, Exhibit 2, at 27-28.

4           There is no evidence that Juror 9's use of an assisted-hearing device exposed the juror to

5   extrinsic information that prejudiced the juror's ability to fairly and impartially deliberate and

6   reach a verdict.  Mr. Thomas has not shown that the state court adjudication of this claim was

7   contrary to, or involved an unreasonable application of clearly established federal law and

8   therefore, it is recommended that habeas relief as to Claim 11 be denied.

9   **I.      Claims 12, 13, and 14 – Ineffective Assistance of Counsel (Challenging Juror 9 for
10          Cause, Use of Preemptory Challenges to Excuse Jurors 6, and 26)**

11          Under the two-prong standard of *Strickland*, a petitioner must show that counsel's

12  performance was so deficient that it "fell below an objective standard of reasonableness."

13  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  He must also show the deficient

14  performance so prejudiced the defense that it deprived him of the right to a fair trial and caused

15  the state court proceedings to be unreliable.  *Id.* at 687.  A petitioner must satisfy both prongs.

16  *Id.* at 697.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*,

17  466 U.S. at 689.  "[C]ounsel is strongly presumed to have rendered adequate assistance and

18  made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.

19          The primary question when reviewing a claim of ineffective assistance of counsel under

20  AEDPA is not whether counsel provided ineffective representation, or whether the state court

21  erred in its analysis of the claim.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  The primary

22  question is whether the state court adjudication was objectively unreasonable.  *Id.*; *Bell v. Cone*,

23  535 U.S. at 699.

REPORT AND RECOMMENDATION- 29

Mr. Thomas contends counsel provided ineffective representation by challenging Juror 9 for cause, and for not using a peremptory challenge to remove Jurors 6 and 26.

### 1.    Juror 9

As previously discussed, the state courts determined that Juror 9 was not biased and could decide the facts and reach a verdict impartially. Mr. Thomas contends that counsel should have challenged Juror 9 for cause but fails to show why counsel would do so or whether the judge would have granted such a challenge and excused Juror 9. Mr. Thomas fails to show deficient representation or prejudice.

### 2.    Peremptory Challenge – Jurors 6 and 26

Mr. Thomas complains Juror 6 was familiar with the jewelry store because he made purchases there in the past. Dkt. 70-1, at 32-34. Juror 26 had been a law enforcement officer. *Id.*, at 37-40.

Establishing *Strickland* prejudice in the context of juror selection requires a showing that, as a result of trial counsel's failure to exercise peremptory challenges, the jury panel contained at least one juror who was biased. *United States v. Quintero–Barraza*, 78 F.3d 1344, 1349 (9th Cir.1995). "The Supreme Court has suggested that the relevant test for determining whether a juror is biased is 'whether the juror[ ] ... had such fixed opinions that [he] could not judge impartially the guilt of the defendant.'" *Id.* (quoting *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)) (alterations in original).

The jurors' answers to the voir dire questions do not demonstrate that they held such fixed opinions that they could not judge impartially the guilt of Mr. Thomas. The voir dire of Juror 6 reflects that he lived about six blocks from the jewelry store, visited the store every three to four months, had purchased items before and after the first robbery, and had talked with

REPORT AND RECOMMENDATION- 30

people at the store about the robberies and new security.  *Id.*, at 34.  The voir dire of Juror 26

reflects that Juror 26 was a retired chief of police in Colorado and at the time of the trial, worked

with the Seattle Police Department as a labor relations manager and testified on their behalf.  He

also stated that in his 30 years of experience, he has never seen an innocent person get charged.

*Id.*, p. 29.  Juror 26 had never sat on a criminal jury panel and "being able to make unbiased

decision it would probably be one of my toughest roles, but I, would hope that I should be able to

do that."  He also stated that "maybe my prejudice might lie with the prosecution or the police."

*Id.*

The undersigned is not persuaded that the foregoing statements indicate a view so "fixed"

that either of these jurors would not and did not honor their oath to faithfully apply the law.

Neither do these statements establish that the jurors did not intend to approach the evidence with

an understanding of the proper allocation of burdens in a criminal case.  Being a customer at a

jewelry store that was robbed or working in law enforcement is not inconsistent with being able

to view the facts impartially.

Moreover, Mr. Thomas fails to show prejudice.  As long as the jury that sits at trial is

impartial, there is no Sixth Amendment violation.  *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988).

Mr. Thomas fails to show the jury that sat on his trial was not impartial and fails to show a

reasonable probability that the result of the proceedings would have been different if three other

jurors had sat on his trial.  In light of the evidence presented at trial – positive identifications

from the 7-Eleven surveillance video, eyewitness testimony by two victims whom Mr. Thomas

held at gunpoint and handcuffed – Mr. Thomas would still have been convicted even if his

counsel had used strikes to remove them from the jury panel.  Accordingly, the undersigned

REPORT AND RECOMMENDATION- 31

concludes that Mr. Thomas is not entitled to federal habeas relief as to Claims 12, 13, and 14 and they should be denied.

**J.    Claim 16 – Prosecutorial Misconduct – Presentation of False Evidence**

Mr. Thomas alleges the prosecution knowingly presented false evidence to identify him as the robber.  Dkt. 70-1, at 43-54.

To succeed on a claim that the prosecution presented false testimony, the petitioner must prove the prosecutor knowingly used materially false testimony.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  "[I]f the prosecution knowingly uses perjured testimony, or if the prosecution knowingly fails to disclose that testimony used to convict a defendant was false, the conviction must be set aside if there is any reasonable likelihood that the false evidence could have affected the jury verdict."  *United States v. Bagley*, 473 U.S. 667, 678-80 (1985).  "Absent this reasonable likelihood, the government's knowing use of perjured testimony does not warrant relief."  *United States v. Rewald*, 889 F.2d 836, 860 (9th Cir. 1989), *modified*, 902 F.2d 18 (9th Cir. 1990).  Mere inconsistencies and the presentation of contradictory evidence do not suffice to prove that the prosecution knowingly presented false testimony.  *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1989); *United States v. Nechochea*, 986 F.2d 1273, 1280 (9th Cir. 1993); *United States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995).

The Washington Court of Appeals rejected this claim:

> Thomas argues that the prosecutor knowingly solicited false testimony from Susan Edwards, Hohner's apprentice.  According to surveillance tapes, Edwards was in the store the day before the robbery. She testified that she watched a man in a yellow track suit jacket shop for about 45 minutes to an hour.  She said that when she returned the next day, just after the robbery, she encountered police cars surrounding the crime scene.  Concerned about Hohner's safety, she checked in with him.  She testified that when Hohner had been robbed, Edwards said, "it was the man in the yellow jacket, wasn't it?"  Hohner replied "yes, it was."  Almost 18 months later, a detective called Edwards and conducted a phone interview.  During that interview Edwards said that she was

not sure if she would be able to identify the defendant. Just before being called to testify, Edwards was shown a surveillance video of the day of the robbery. On the stand, the prosecutor asked her if the man in the yellow track suit that she had seen the day before the robbery was in the courtroom. She pointed to Thomas, the only black man in the room, sitting at the defense table. Defense counsel made a motion for mistrial. After reading from the detective's interview transcript, the trial court said "[s]he testified concerning her change of opinion. I think that it goes to the weight of her testimony and not as to the admissibility." Because defense counsel had the opportunity to cross-examine the witness when she made the inconsistent statements, the trial court denied the motion.

The grant or denial of a motion for mistrial is reviewed for abuse of discretion. *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000) (citing *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). "An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court." *Greiff*, 141 Wn.2d at 921 (citing *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). "A trial court's denial of a motion for mistrial 'will be overturned only when there is a substantial likelihood the prejudice affected the jury's verdict.'" *Greiff*, 141 Wn.2d at 921 (quoting *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)).

"It is fundamentally unfair for a prosecutor to knowingly present perjury to the jury." *United States v. LaPage*, 231 F.3d 488, 491, 271 F.3d 909 (9th Cir. 2000). Reversal is required "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id*. at 491. However, in "exercising its discretion, the trial court may consider whether the instance of misconduct is relevant to the witness's veracity on the stand and whether it is germane or relevant to the issues presented at trial. *State v. O'Connor*, 155 Wn.2d 335, 349-50, 119 P.3d 806 (2005) (citing *State v. Griswold*, 98 Wn. App. 817, 831, 991 P.2d 657 (2000).

Thomas cites to cases containing examples of false testimony. [footnote omitted] However, the circumstances in Thomas' case are distinguishable. Edwards was not under oath when she was interviewed over the phone. She was not the only eye-witness; Hohner himself had lengthy interactions with Thomas, as did Farrell and Kursnikhi. Because she was not the only individual to interact with Thomas, her credibility was not key to his identification and eventual conviction. Edwards' in-court identification was not flatly contradictory with her statement during the telephone interviews. Further, the prosecution in this case did not intentionally solicit testimony that was known perjury—the prosecutor simply asked the apprentice if she saw the "person who entered that store on September 20th in court?" Even if Edwards' statements can be characterized as false, they were not dispositive. There is not a substantial likelihood that any prejudice that may have occurred affected the jury's verdict. The trial court did not abuse its discretion when it denied Thomas' motion for mistrial.

Dkt. 89, Exhibit 2, at 20-22.

At best, the record reflects an inconsistency between Ms. Edwards' pretrial interview statement and trial testimony. The trial court correctly identified the inconsistency as going to the weight of her testimony and not its admissibility. Moreover, Ms. Edwards was not the primary witness and in fact, was just one of many witnesses who identified Mr. Thomas as the robber.

Based on the foregoing, the undersigned concludes that Mr. Thomas is not entitled to habeas relief on Claim 16 and recommends that the claim be denied.

**K.    Claim 17 – In-Court Identification**

In Claim 17, Mr. Thomas argues that the in-court identification employed by the prosecutor was impermissibly suggestive. The Washington Court of Appeals rejected this claim:

> As noted above, Edwards had been shown a surveillance video of the robbery just before taking the stand. When asked by the prosecution if the man she had seen in the jewelry store was in the courtroom, she pointed to Thomas, the only black man in the courtroom. Before this, she had not yet identified a perpetrator. Defense counsel made a motion for mistrial, arguing that "what the State has done in asking her to identify Mr. Thomas in court is the same as a one-person lineup that is unconstitutionally suggestive." This motion was denied by the trial court.
>
> Again, we review a trial court's decision on a motion for mistrial under the abuse of discretion standard. *Greiff*, 141 Wn.2d at 921. "[W]hen the issue is whether a witness may make an in-court identification after an earlier identification, it must be determined whether the earlier identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *State v. McDonald*, 40 Wn. App. 743, 746, 700 P.2d 327 (1985) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)). The defendant bears the burden of establishing both that the identification procedures were impermissibly suggestive and that this suggestiveness created a substantial risk of irreparable misidentification. *State v. Kinard*, 109 Wn. App. 428, 433, 36 P.3d 573 (2001); *State v. Maupin*, 63 Wn. App. 887, 897, 822 P.2d 355 (1992). Several factors determine whether, in light of the totality of the circumstances, there is a substantial likelihood of irreparable misidentification. These include:

REPORT AND RECOMMENDATION- 34

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated [by the witness] at the confrontation, and the [length of] time between the crime and the confrontation.

*Maupin*, 63 Wn. App. at 897; *see also State v. Ratliff*, 121 Wn. App. 642, 649, 90 P.3d 79 (2004). In *McDonald*, the court reversed and remanded for new trial, finding that because the witness only observed the defendant for two to three minutes, was unsure as to whether he had a mustache, gave an inaccurate description of the defendant's clothing, and picked the wrong person at the lineup, the likelihood of irreparable misidentification was very substantial. *McDonald*, 40 Wn. App. at 747-49. However, other convictions have been affirmed because the identification factors are distinguishable from *McDonald*. [footnote omitted] Considering the totality the circumstances surrounding Edwards' identification of Thomas, we find that the potentially suggestive nature of viewing the surveillance video just before testifying does not outweigh the other indicators of reliability.

Edwards testified that Thomas was in the store for about 45 minutes to one hour, though she only closely observed him for about 15 minutes. She gave a detailed and accurate description of what he was wearing, including a hat and sunglasses. She testified that she found it strange that he was wearing sunglasses when he came to look at jewelry. She testified that because she had worked in law enforcement and security, she had a habit of observing other people. According to Edwards, the defendant stood out to her because "[h]e was wearing a bright yellow jacket and he gave [her] the creeps." When asked by the prosecutor whether she saw the person who had been in the store in the courtroom, she pointed at Thomas. Finally, during cross-examination counsel asked whether she identified Thomas because he was the person she remembered being in the store or because he resembled the person in the videotape. Edwards responded "[b]ecause he is the person that was in the store that day." While this identification took place 21 months after the crime, Thomas has not demonstrated, in light of the rest of the circumstances, that there was a substantial likelihood of irreparable misidentification. The lineup was not unconstitutionally suggestive; Thomas' due process rights were not violated. The trial court did not abuse its discretion when it denied-his motion for mistrial.

Dkt. 89, Exhibit 2, at 22-25.

To challenge an identification, the petitioner must show "that the confrontation conducted . . . was so unnecessarily suggestive and conductive to irreparable mistaken identification that he was denied due process of law." *Neil v. Biggers*, 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)). Whether the identification was unduly suggestive,

REPORT AND RECOMMENDATION- 35

1    however, "must be determined 'on the totality of the circumstances.'" *Neil*, 409 U.S. at 196.

2    "[T]he admission of evidence of a showup without more does not violate due process." *Id*. at

3    198.  Absent a showing that the identification was unreliable, the evidence is properly admitted

4    even though the confrontation was impermissibly suggestive.  *Id*. at 199; *Manson v. Brathwaite*,

5    432 U.S. 98, 114-17 (1977).

6         The state court's decision on this claim was not an unreasonable application of clearly

7    established federal law.  As noted by the court of appeals, the totality of the circumstances

8    surrounding Ms. Edwards' identification show that even if viewing the surveillance video just

9    before testifying was suggestive, this was outweighed by other indicators of reliability in her

10    testimony, *i.e.*, she closely observed him in the store for about 15 minutes, she gave a detailed

11    and accurate description of what he was wearing, including sunglasses and a bright yellow

12    jacket, and she was able to identify him as the person she remembered being in the store.

13    Accordingly, Mr. Thomas is not entitled to habeas relief on Claim 17 and it is recommended that

14    the claim be denied.

15    **L.    Claim 18 – Improper Admission of Fingerprint Evidence**

16         Mr. Thomas contends the state court improperly admitted fingerprint evidence without

17    contrary to the standards of *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923) and *Daubert v.*

18    *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

19         Mr. Thomas complains that the state courts abandoned the rules of evidence and violated

20    the standards for admission of scientific evidence.  He contends that new evidence casts doubt on

21    the reliability of fingerprint evidence.  However, federal habeas relief does not lie for mere errors

22    of state law. *Estelle*, 502 U.S. at 67.  Allegations of state evidentiary error are not cognizable in

23    federal court.  *See Romano v. Oklahoma*, 512 U.S. 1, 10 (1994).  "[A] federal habeas court may

REPORT AND RECOMMENDATION- 36

1  not prescribe evidentiary rules for the states." *Swan v. Peterson*, 6 F.3d 1373, 1382 (9th Cir.

2  1993).

3      Moreover, *Daubert* determined "the standard for admitting expert scientific testimony in

4  a *federal* trial" under the Federal Rules of Evidence. *Daubert,* 509 U.S. at 582 (emphasis

5  added); *id.* at 585-95. Thus, the alleged violation of *Daubert* does not state a claim in this

6  proceeding.

7      Mr. Thomas fails to show a constitutional error as to the state court's admission of

8  fingerprint evidence and therefore, Claim 18 should be denied.

9                                **CERTIFICATE OF APPEALABILITY**

10     If the district court adopts the Report and Recommendation, it must determine whether a

11  certificate of appealability ("COA") should issue. Rule 11(a), Rules Governing Section 2254

12  Cases in the United States District Courts ("The district court must issue or deny a certificate of

13  appealability when it enters a final order adverse to the applicant."). A COA may be issued only

14  where a petitioner has made "a substantial showing of the denial of a constitutional right." See

15  28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of

16  reason could disagree with the district court's resolution of his constitutional claims or that

17  jurists could conclude the issues presented are adequate to deserve encouragement to proceed

18  further." *Wilson-El v. Cockrell*, 537 U.S. 322, 327 (2003).

19     The Court recommends that Mr. Thomas not be issued a COA. No jurist of reason could

20  disagree with this Court's evaluation of his habeas claims or would conclude that the issues

21  presented deserve encouragement to proceed further. Mr. Thomas should address whether a

22  COA should issue in his written objections, if any, to this Report and Recommendation.

23                                          **CONCLUSION**

REPORT AND RECOMMENDATION- 37

1    The Court recommends **DENYING** the habeas petition on the merits without an

2    evidentiary hearing.  The Court also recommends **DENYING** issuance of a certificate of

3    appealability.

4          Any objections to this Recommendation must be filed and served upon all parties no later

5    than **Monday, July 31, 2017.**  The Clerk should note the matter for **Wednesday, August 2,**

6    **2017,** as ready for the District Judge's consideration if no objection is filed.  If objections are

7    filed, any response is due within 14 days after being served with the objections.  A party filing an

8    objection must note the matter for the Court's consideration 14 days from the date the objection

9    is filed and served.  The matter will then be ready for the Court's consideration on the date the

10   response is due.  Objections and responses shall not exceed twelve (12) pages.  The failure to

11   timely object may affect the right to appeal.

12         DATED this <u>11th</u> day of July, 2017.

13

14                              BRIAN A. TSUCHIDA
                               United States Magistrate Judge

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION- 38